

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00567-CV

**EX PARTE** Tad Dana **PERRY**

Original Habeas Corpus Proceeding[1]

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  September 3, 2014

PETITION FOR WRIT OF HABEAS CORPUS GRANTED IN PART, DENIED IN PART

This is an original habeas corpus proceeding brought on behalf of Tad Dana Perry on August 8, 2014. Perry contends the commitment order in which the trial court found him in criminal contempt for failure to pay previously ordered child support is void because: (a) the court's finding of ability to pay is an abuse of discretion; (b) the alleged violations are ambiguous; (c) it is based in part upon alleged violations of an order which has been superseded; and (d) it improperly restricts the sheriff's discretion to award good conduct time credit. We agree that the order improperly limits the sheriff's authority to determine relator's entitlement to good conduct time credit. Therefore, we grant the petition for writ of habeas corpus in part, such that the

---

[1] This proceeding arises out of Cause No. 07-06-4710-CCL, styled *In the Interest of T.S.P., A Child*, pending in the County Court at Law, Medina County, Texas, the Honorable Vivian Torres presiding.

provision prohibiting the award of good conduct time credit is stricken. All other requested relief is denied.

## BACKGROUND

Perry was initially ordered to pay child support in a Final Decree of Divorce dated January 14, 2004, in Cause No. 02-731-B, styled *In the Matter of the Marriage of Marsalie Perry and Tad Dana Perry and In the Interest of T.S.P., A Child*, in the 198th Judicial District Court, Kerr County, Texas. Under the Decree, Perry was obligated to pay $690.00 per month in two installments of $345.00 each on the 10th and 25th of each month. Perry was also ordered to pay an additional amount each month as reimbursement for the cost of insuring the child through the mother's employment.

On November 19, 2007, an agreed modification order was signed in Cause No. 07-06-4710-CCL, styled *In the Interest of T.S.P., A Child*, in the County Court at Law, Medina County, Texas, which modified Perry's support obligation. Under the 2007 child support modification order, Perry was ordered to make two payments of $450.00 each on the 10th and 25th of each month.[2]

A second agreed order modifying the divorce decree was signed in 2011. This second modification order did not modify either the amount or the frequency of Perry's child support obligation, stating, "Child support is not modified by this order and continues at the amount and frequency of the previous order dates (sic) November 19, 2007."

In April 2014, the trial court conducted a hearing on petitioner Marsalie Zinsmeyer's motion seeking to enforce the court's previous orders by contempt. On July 28, 2014, the trial court signed the Order Committing Respondent to the Medina County Jail (the "Commitment

---

[2] The mandamus record provided does not reflect whether the 2007 modification order includes an additional amount for reimbursement of health insurance costs.

Order"), finding that Perry violated the 2004 Decree on one occasion in 2006, and violated the 2007 child support modification order on seven separate occasions between December 2011 and September 2013. The Commitment Order states:

> IT IS ORDERED that punishment for each separate violation is confinement in the county jail of Medina County, Texas, for a period of 3 days for each violation listed above.
> IT IS THEREFORE ORDERED that Respondent is committed to the county jail of Medina County, Texas, for a period of 3 days for each separate violation enumerated above.
> IT IS ORDERED that each period of confinement assessed in this order shall run and be satisfied consecutively.
> IT IS FURTHER ORDERED that Respondent not be given good conduct time credit for time spent in the county jail.

The trial court ordered Perry to periods of confinement from 6:00 p.m. on Friday to 6:00 p.m. on Sunday for each of seven consecutive weekends beginning on Friday, August 1, 2014 and ending on Sunday, September 14, 2014.

Perry filed this petition for writ of habeas corpus on August 8, 2014, complaining of the trial court's Commitment Order.[3]

## ANALYSIS

A relator is entitled to habeas corpus relief if he establishes he was deprived of liberty without due process of law, or if we conclude the judgment ordering confinement is void. *See In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005); *In re Alexander*, 243 S.W.3d 822, 824 (Tex. App.—San Antonio 2007, orig. proceeding). The purpose of a habeas corpus proceeding is not to

---

[3] With the petition, Perry also filed a Motion for Emergency Temporary Relief. This court issued an order denying the request for emergency relief on August 8, 2014. We issued a separate order requesting a response to the petition on August 11, 2014. Trial counsel for Marsalie Zinsmeyer filed a Notice of Nonrepresentation on August 15, 2014, advising that he did not represent Zinsmeyer for purposes of the original proceeding filed in this court. No response to the petition for writ of habeas corpus was filed on behalf of the respondent or the real party in interest.

determine the relator's guilt or innocence, but to ascertain if the relator has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979); *Alexander*, 243 S.W.3d at 827.

### 1. *Affirmative Defense of Inability to Pay*

Perry asserts that the record from the enforcement hearing does not support the trial court's finding in the Commitment Order that he "was able to pay child support and attorney's fees in the amounts and on the dates ordered." Perry admits that his failure to pay is supported by the record, but points to his own testimony, and that of his accountant, as evidence establishing a prima facie defense of his inability to pay.[4]

Perry testified that, beginning in approximately August or September 2013 his business, a crane and rigging company, began to slow, a situation which continued through part of February 2014. Perry also provided testimony regarding his business and personal expenses, a $10,000.00 payment he received in 2013 from a life insurance policy after his father's death, some recent equipment purchases for his business, and a real estate transfer in January 2014 in which he obtained title to a piece of real property. He testified that he has no significant savings and that he unsuccessfully attempted to secure bank loans to pay the support arrearages he learned of in December 2013. In response to questions from his lawyer, Perry testified that he did not have the ability to pay the support obligations as they became due and that he did not intentionally fail to pay the obligations. He further testified that if he were to liquidate all of his assets, he would not have enough money to pay the total amount of his child support arrearage after satisfying an existing federal tax lien in the amount of approximately $46,000.00.

In response to questions from Zinsmeyer's counsel, Perry admitted that many of the violations alleged in Zinsmeyer's motion occurred prior to any slowdown in his business activity

---

[4] The trial court admitted the payment record from the state's child support registry as evidence at the hearing. These records appear to provide the basis for the payment amounts and violations identified in the Commitment Order.

which, by his testimony, began in August or September of 2013. Perry's personal and business accountant, Gina Carter, testified that tax documents and financial statements admitted as evidence at the hearing demonstrated that Perry's annual net income for the years 2011, 2012 and 2013 was roughly consistent across the three-year period.

The Texas Family Code provides that a child support obligor may plead an inability to provide support in the amount ordered as an affirmative defense to an allegation of contempt for failure to pay child support. *See* TEX. FAM. CODE ANN. §157.008(c) (West 2014). The obligor bears the burden of establishing the defense of inability to pay. *See Ex parte Johns*, 807 S.W.2d 768, 772 (Tex. App.—Dallas 1991, orig. proceeding).

In a child support enforcement proceeding, there are two types of contempt — civil and criminal — the distinction being based on the nature and purpose of the penalty imposed. *Id*. at 770. In a civil contempt order, the court imposes remedial punishment, which may include conditional confinement, in an attempt to persuade the obligor's compliance with a previous order. The contemnor is said to carry the keys to his own imprisonment because he can avoid incarceration by obeying the court's order. *See Shillitani v. United States*, 384 U.S. 364, 368 (1966); *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976). In a civil contempt order, the trial court can impose a fine or imprisonment or both, as long as the imprisonment is conditional. *Johns*, 807 S.W.2d at 770. A criminal contempt order is punitive in nature, intended to punish the contemnor for "some completed act which affronted the dignity and authority of the court." *Werblud*, 536 S.W.2d at 545. No subsequent voluntary compliance can enable the contemnor to avoid punishment for the already completed acts of contempt.

The justification for coercive confinement in a civil contempt proceeding depends upon the contemnor's ability to comply with the court's order. *Johns*, 807 S.W.2d at 772. Accordingly, the affirmative defense of inability to pay to a charge of civil contempt looks at the contemnor's

present ability to pay as of the date of the contempt hearing. *See Johns*, 807 S.W.2d at 773, n.1 (in a civil contempt, a relator must establish the inability to perform the act which will purge him from the contempt); *see also Ex parte Ramon*, 821 S.W.2d 711, 713 (Tex. App.—San Antonio 1991, orig. proceeding). In a criminal contempt context, the question is whether the obligor had an ability to pay the support when it became due, but failed to do so. The obligor's ability to pay at the time the obligation accrued is the relevant inquiry in a criminal contempt proceeding. *See Ramon*, 821 S.W.2d at 713 (to hold criminal portion of contempt order invalid on the basis of the affirmative defense, relator must conclusively establish the inability to pay each obligation as it accrued).

The Commitment Order finds Perry guilty of criminal contempt for violations of existing child support orders on a number of occasions dating from October 2006 to September 2013. The testimony Perry relies upon as establishing the affirmative defense of inability to pay pertained to his present lack of funds and inability to obtain loans or otherwise borrow money to meet his overdue obligations. The first six violations found by the court occurred well before Perry's alleged decline in business. Only the last two violations, for payments due in August and September 2013, were during the time frame of the purported slow down. The trial court had before it other evidence, however, of income and expenditures during 2013 from which it could have concluded that Perry had an ability to make the payments as they became due. We conclude that the record provides adequate support for the trial court's finding that Perry failed to establish the affirmative defense of inability to pay the child support obligations as they became due. *See Ramon*, 821 S.W.2d at 713.

### 2. *Ambiguity of Commitment Order*

Perry contends that because the Commitment Order lists, with respect to the first identified violation, both a payment and a failure to pay during the month of October 2006, the Order is void as ambiguous. Perry further contends that because the Commitment Order does not associate each

violation with a particular date of confinement, the period of incarceration ordered for a valid violation cannot be distinguished from the period of incarceration for an invalid violation. According to Perry, the Commitment Order therefore fails in its entirety. We disagree.

The child support order in the 2004 Decree obligated Perry to pay support in the amount of $690.00 per month in two installments of $345.00 each on the 10th and 25th of each month. In the Commitment Order, the court found Perry violated the 2004 child support order "in the amounts and on the dates as shown below:

| Violation | Date Due | Date Paid | Amount Due | Amount Paid |
|---|---|---|---|---|
| 1. | October 10, 2006 | October 4, 2006 | $345.00 | $493.00 |
|  | October 25, 2006 | none | $345.00 | $0.00." |

The amount paid prior to the first due date on the 10th of the month was more than what was due on that date ($345.00), but was insufficient to also satisfy what was due on the 25th of the month. The Commitment Order clearly identifies this as a single violation. The payment history demonstrates that Perry violated the 2004 child support order by failing to pay the full amount due for October 25, 2006, even if the trial court considered his over payment from earlier in the month. We conclude that the Commitment Order is not void on the basis of ambiguity with respect to the first identified violation.

### 3. Alleged Violation of a Superseded Order

Perry contends that because the trial court entered an agreed modification order in 2011, he could only be found guilty of violating that order after its entry. According to his argument, because the Commitment Order finds him in contempt of the 2007 agreed modification order for violations occurring in 2011, 2012 and 2013, the Commitment Order is void.

The 2011 agreed modification order clearly states, "Child support is not modified by this order and continues at the amount and frequency of the previous order dates (sic) November 19,

2007." The 2011 order goes on to re-state Perry's obligation to pay $450.00 semi-monthly, "with the payments continuing on the 10th and 25th of each month as previously ordered."

The 2011 agreed modification order clearly extends the applicability of the 2007 order for purposes of identifying Perry's on-going child support obligation. We do not agree that the 2011 order supersedes the 2007 order on the issue of child support. On the contrary, it expressly continues the obligation "as previously ordered."

### 4. Good Conduct Time Credit

The Commitment Order also states, "IT IS FURTHER ORDERED that Respondent not be given good conduct time credit for time spent in the county jail." Perry contends that the trial court's inclusion of this provision is an exercise of power exclusively in the discretion of the Sheriff and, thus, constitutes a violation of the separation of powers. *See* TEX. CONST. art. II, § 1.

The Texas Code of Criminal Procedure provides, "The sheriff in charge of each county jail may grant commutation of time for good conduct, industry, and obedience." TEX. CODE CRIM. PROC. ANN. art. 42.032 § 2 (West Supp. 2014). The authority to award good conduct time credit is a matter reserved to the sheriff's sole discretion by this statute. *Kopeski v. Martin*, 629 S.W.2d 743, 745 (Tex. Crim. App. 1982). The trial court's authority in the contempt proceeding is to pronounce the punishment for violations found, as authorized by law. *Id*. The trial court in a contempt proceeding has no authority to limit the sheriff's discretion to grant commutation for good conduct if appropriate and otherwise warranted. *See Kopeski*, 629 S.W.2d at 745; *Ex parte Roosth*, 881 S.W.2d 300, 301 (Tex. 1994) (orig. proceeding). Accordingly, we conclude the provision in the Commitment Order that Perry "not be given good conduct time credit," is void. *Roosth*, 881 S.W.2d at 301.

This conclusion, however, does not automatically render the entire order invalid. *See id*. The Texas Supreme Court has stated that "a judgment may be void in part and valid in part

provided the valid portion is not so dependent on the invalid as to fall within it." *Kubena v. Hatch*, 144 Tex. 627, 193 S.W.2d 175, 177 (1946); *see also Supak v. Zboril*, 56 S.W.3d 785, 795 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Based on the discussion elsewhere in this opinion, we conclude that the Commitment Order is otherwise valid in every respect. Accordingly, we grant in part the petition for writ of habeas corpus, such that the provision barring good conduct time credit is stricken from the Commitment Order. *See Roosth*, 881 S.W.2d at 301.

## CONCLUSION

We conclude that the provision in the trial court's Commitment Order restricting the sheriff's discretion to award good conduct time credit is void. *Id*. We further conclude that the Commitment Order is in all other respects a valid order. We therefore grant in part the petition for writ of habeas corpus, such that the provision barring good conduct time credit is stricken. We presume that the sheriff will properly decide matters regarding commutation of time. *See* TEX. CODE CRIM. PROC. ANN. art. 42.032 § 2 (West Supp. 2014). All other requested relief is denied.

Sandee Bryan Marion, Justice